[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
ISSUES
I. Should the court grant the cross-claim defendant Marino's motion to strike count two of the cross-complaint filed by Northeast?
II. Should the court grant the cross-claim defendant's motion to strike count three of the cross-complaint?
III. Should the court grant the cross-claim defendant's motion to strike count four of the cross-complaint?
FACTS
This action arises from an accident which occurred on October 26, 1989 at the Millstone Nuclear Power Plant, where an individual was injured by a pulley/reel mechanism on a truck during the course of his employment. On July 22, 1992, Dennis and Christine Miller brought a ten-count action alleging negligence and loss of consortium as to defendants Northeast Utilities Corporation, Northeast Nuclear Energy Company, and Connecticut Light and Power Company [hereinafter collectively Northeast], and product liability and loss of consortium as to defendant S.G. Marino Crane Service Corporation [hereinafter Marino]. The complaint alleges that Northeast owns and operates the power plant and that Marino manufactured and sold the pulley/reel mechanism which caused the injury.
On September 24, 1992, Northeast filed a CT Page 3828 cross-claim against Marino, which is the subject of the present motion. Count one, which is not at issue, alleges common law negligence. Count two alleges that the pulley/reel mechanism leased to Northeast by Marino was in an unreasonably dangerous condition, and that Marino, as a product seller, is liable for any resulting damages under the Connecticut Product Liability Act, General Statutes52-572(n) et. seq. Count three contains the same allegations, and alleges that Northeast is entitled to contribution from Marino. Count four alleges that Northeast relied on Marino when leasing the mechanism, and therefore Marino breached the implied warranty of fitness for a particular purpose in violation of General Statutes42a-2-315. Northeast seeks indemnification and monetary damages, including expenses, costs, and attorneys fees incurred in defending the plaintiff's action.
Marino currently moves to strike counts two, three and four of Northeast's cross-complaint on the grounds that indemnification claims may not be made under the Product Liability Act, that the defendant's contribution claim is premature and does not state a separate cause of action, and that the defendant failed to allege elements essential to an action for breach of the implied warranty of fitness for a particular purpose.
As required by Practice Book 155, the defendant filed a memorandum in support of its motion to strike, and the plaintiff filed a timely memorandum in opposition.
DISCUSSION
"The purpose of a motion to strike is to challenge the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted." Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988); Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. King v. Board of Education, 195 Conn. 90, 93, 463 A.2d 1111 (1985). The court must construe the facts most favorably to the pleader. Blancato v. Feldspar, 203 Conn. 34, 36,522 A.2d 1235 (1987). "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them and if facts provable under CT Page 3829 the allegations would support a defense or cause of action, the motion to strike must fail (citation omitted)." Alarm Application Co. v. Simsbury Volunteer Fire Co., 179 Conn. 541,545, 427 A.2d 822 (1980).
As to count two of the cross-complaint, Marino argues in its memorandum of law accompanying its motion to strike that an indemnification claim may not be made under the Product Liability Act, because the statute replaced indemnification with comparative responsibility principles. Northeast argues in its memorandum in opposition that common law indemnification continues as a viable cause of action in the context of product liability claims where both defendants are not product-sellers since, in such a case, comparative responsibility is not applicable.
Two supreme court cases address the question of whether common law indemnification applies in the context of a suit brought under Connecticut's Product Liability Act, General Statutes 52-572m through 52-572r. In Kyrtatas v. Stop Shop, Inc., 205 Conn. 694, 699, 535 A.2d 357 (1988), the court concluded that "the common law doctrine of indemnification is inconsistent with provisions of the product liability act concerning comparative responsibility, award of damages, and contribution under General Statutes52-572(o).[1] The court held that the act abrogated common law indemnification principles, but noted that the holding applied to situations where all potential defendants are parties to a suit. Id., 702 n. 2. The court's decision did not address when a party may seek indemnification for liability imposed in a product liability suit through a statutory or express contractual claim. Id., 703.
In Malerba v. Cessna Aircraft Co., 210 Conn. 189,198-99, 554 A.2d 287 (1989), the court concluded that "common law indemnification continues as a viable cause of action in the context of product liability claims and that the comparative responsibility principles that serve as its foundation do not bar a later determination of liability as between an indemnitor and an indemnitee." The court reasoned that indemnification was proper because a judgment for the plaintiff against more than one defendant does not conclusively determine the rights and liabilities of the defendants as against one another, unless they were determined in the first action by cross-claim or other adversary CT Page 3830 proceedings. Id. The court noted that Kyrtatas was "specifically limited to its factual circumstances," but declined to overrule it. Id., 198 n. 9; see also Beaudoin v. Town Oil Co., 207 Conn. 575, 583 n. 4, 542 A.2d 1124 (1988).
Lower courts subsequently have held that Kyrtatas rather than Malerba controls when the defendants are original parties to the action; see Buda v. Valley Diner, 8 C.T.L.R. 258 (February 22, 1992, Flynn, J.); United States Fidelity v. McDonnell Leasing Corp., 6 C.T.L.R. 495 (June 29, 1992, Rush, J.); and when indemnification is sought exclusively pursuant to the product liability statute rather than under any kind of active/passive dichotomy. See Atlantic Mutual Insurance Co. v. Ford Product Corp., 2 Conn. L. Rptr. 228 (August 20, 1990, Lewis, J.); but see Allstate Insurance Co. v. Chic Miller Chevrolet-Isuzu, Inc., 4 Conn. L. Rptr. 500 (August 6, 1991, Aurigemma, J.).
Northeast argues in its memorandum of law in opposition to Marino's motion that the Malerba court's rationale in allowing an indemnification claim, i.e., that co-defendants' rights, as against each other, are not necessarily determined in the original action, applies in this case. However, despite the reasoning in Malerba, its holding is limited to cases involving defendants who are not original parties to the action.[2] Since both parties to this cross-complaint are original defendants, Kyrtatas applies and common law indemnification is not a viable cause of action. Accordingly, Marino's motion to strike count two of the cross-complaint is hereby granted.
As to count three of the cross-complaint, Marino argues in its memorandum of law accompanying its motion to strike that the allegations regarding contribution are premature and do not state a cause of action, since52-572(o) provides that a claim for contribution may only be made when certain preconditions are met. Northeast argues in its memorandum in opposition that the preconditions of the statute only apply to independent causes of action based on contribution.
The preconditions for a contribution claim set out in 52-572(o)(e) of the Connecticut Product Liability Act[3]
"apply only to those circumstances where a party elects to pursue an independent cause of action for contribution rather CT Page 3831 than impleading the prospectively liable third party. . ." Malerba v. Cessna Aircraft Co., supra, 195. Whether count three of the cross-complaint survives Marino's motion to strike depends upon whether the cross-claim is an independent cause of action.
Several superior courts have granted motions to strike cross-claims for contribution in product liability actions, viewing such claims as independent causes of action. See United States Fidelity v. McDonnell Leasing Corp., supra; Malinowski v. Frederick Air Conditioning Co.,2 Conn. L. Rptr. 425 (September 14, 1990, Flynn, J.). One court, however, reached the opposite result, finding that under the reasoning in Malerba, satisfaction of the preconditions of52-572 are not required to bring a contribution claim in an action where both defendants are already parties, in order to encourage parties to consolidate litigation flowing from a given circumstance. See I.T.T. Semiconductors v. Mathison Gas Products, 6 C.T.L.R. 276 (April 18, 1992, Flynn, J.). Allowing a complainant who is already a party to an existing action to assert a contribution claim is a more sound approach, as the Malerba court noted the importance of avoiding multiplicity of actions. See Malerba v. Cessna Aircraft Co., supra, 195.
Although Northeast's contribution action is a separate claim, it is between two original parties to an existing action, so it is not an "independent action" within the reasoning of Malerba. Accordingly, Marino's motion to strike count three of the cross-complaint is hereby denied.
As to the fourth count of the cross-claim, Marino argues in its memorandum of law accompanying its motion to strike that Northeast did not properly state a cause of action for breach of implied warranty of fitness for a particular purpose, because the cross-claim did not allege that Marino was informed of the specific purpose for which the pulley/reel mechanism was to be used. Northeast argues that count four incorporates the first four paragraphs of count one, which refer to a lease agreement between the two parties, and the existence of such an agreement shows that Marino was on notice of how the truck would be used.
General Statutes 42-2-315 provides that: CT Page 3832
 Where the seller at the time of contracting has reason to know particular purposes for which the goods are required and that the buyer is relying on the seller's skill and judgment to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose.
To establish a cause of action for breach of the implied warranty of fitness for a particular purpose, a party must establish (1) that the seller had reason to know of the intended purpose and (2) that the buyer actually relied on the seller. Superior Wire Paper Products, Ltd. v. Talcott Tool Mach., Inc., 184 Conn. 10-19-441 A.2d 43 (1981); Venna v. Nautilus Pools, Inc., 27 Conn. App. 810, 817,610 A.2d 1312 (1992). "This warranty is narrow, more specific, and more precise than the warranty of merchantability, and is most commonly proven when a businessman buys goods that have to be specifically selected for a particular manufacturer and assembled for his business." (Citation omitted.) Standard Structural Steel v. Bethlehem Steel Corp., 597 FF. Supp. 164, 186 (D. Conn. 1984).
Northeast alleges in count four that "the cross claimants relied on the skill and judgment of the S.G. Marino Crane Service Corp. to furnish, maintain, and repair a suitable product for its intended use." The paragraphs of count one which are incorporated into count four only make reference to a lease for a truck equipped with a pulley-reel mechanism.
Merely referring to the existence of the lease does not allege that Marino had reason to know the particular purpose for which the truck was to be used, as required by the statute. Marino may have known the intended purpose because of the lease, but "the court may not look outside the pleadings for facts not alleged." Maliza v. Anderson,42 Conn. Sup. 114, 116, 602 A.2d 1076 (1991, Rush, J.). Northeast failed to specifically allege all the elements required to state a cause of action for breach of the implied warranty of fitness for a particular purpose. Accordingly, Marino's motion to strike count four of the cross-claim is hereby granted. CT Page 3833
CONCLUSION
The defendant Marino's motion to strike counts two and four is granted. The motion to strike count three is denied.
Hurley, J.