HERBERT M. HIERS ET AL. *v.* SAMUEL H. COHEN

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 179744

Memorandum filed December 28, 1973

*Lublin, Lublin & Kantor,* of East Hartford, for the plaintiffs.

*Apter, Nahum & Lenge,* of Hartford, for the defendant.

RUBINOW, J. The amended substituted complaint dated October 1, 1973, alleges, in the first count, that the plaintiff Herbert M. Hiers, in response to a newspaper advertisement, on or about November 27, 1972, requested information from the defendant about the possibility of obtaining a mortgage and informed him that the mortgage Hiers had with the Society for Savings was in default and had to be paid on or before December 31, 1972; that the defendant offered Hiers a new first mortgage on his home; that Hiers informed the defendant that the terms of the proposed mortgage were unacceptable and he would seek financing elsewhere; that at no time did Hiers either request any services to be rendered by the defendant or execute a written contract agreeing to pay the defendant for services rendered, as required by law; that thereafter the defendant called Hiers on numerous occasions and "vehemently insisted" that he accept the loan proposed by the defendant even though Hiers had informed the defendant that financing was being obtained elsewhere; that the defendant called Hiers numerous times and demanded that he pay the defendant a brokerage fee for "services rendered," and told Hiers that his house would be attached so that a new mortgage could not be obtained and that he would, therefore, lose his house through foreclosure of the first mortgage; and that Hiers had obtained a new mortgage loan, which was scheduled to close December 28, 1972, when the first mortgage would be paid off, thereby preventing foreclosure.

In the second count, Hiers alleged that on December 27, 1972, the defendant commenced a lawsuit in the Circuit Court against him to collect a broker's fee.

In the third count, Hiers alleged that the defendant caused an attachment to be placed against Hiers' home; that the lawsuit and the attachment were instituted "with willful malice" and with the intention of preventing Hiers from closing his mortgage on December 28, 1972, with anyone except the party with whom the defendant had attempted to arrange a loan; that the defendant knew or should have known that the suit and attachment would prevent Hiers from obtaining new financing and that Hiers would, therefore, lose his home through foreclosure of the first mortgage; that as a result of the defendant's attachment, Hiers was prevented from obtaining new financing on his home, and the first mortgagee has instituted, or will very shortly institute, foreclosure proceedings against Hiers, thereby causing him to incur additional expenses, inconvenience, despair and anxiety.

In each count, Hiers alleges that, as a result of the defendant's conduct, he has been damaged in that his credit rating and reputation in the community have been irreparably damaged and he has become nervous, tense, irritable and apprehensive about the loss of his home and the defendant's harassing behavior towards him.

In the fourth, fifth, and sixth counts, substantially identical allegations are made by the plaintiff Laurie Hiers.

The defendant has demurred to all counts of the plaintiffs' complaint.

## I

The demurrer to the first and fourth counts is based on the ground that they purport to state a

cause of action for intentionally inflicting an emotional distress, a cause of action which is not recognized in Connecticut, and that even if such a cause of action does exist in Connecticut the counts do not contain facts sufficient to state it, because they do not contain the necessary allegations concerning the type of behavior that this tort is based on.

Our Supreme Court, by implication in a dictum, has recognized the existence of a cause of action for "an intentional subjection of the plaintiff to emotional distress and . . . a negligent subjection of the plaintiff to emotional distress." *Stavnezer* v. *Sage-Allen & Co.*, 146 Conn. 460, 462. In *Stavnezer*, the plaintiff sought damages for emotional upset and resulting physical injury caused by the conduct of the defendant in publicly and falsely accusing her in a loud, belligerent and discourteous manner of not paying for the food she was eating. The court held that such allegations did not state a cause of action for intentional or negligent infliction of emotional distress, citing 2 Harper and James, Torts § 18.4, and note, 64 A.L.R.2d 100, 149.

The Restatement of Torts (Second), § 46, provides that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." In comment d to this section, it is stated: "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. . . . The liability clearly does not

extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. . . ."

One noted authority has stated that there is a "danger of getting into the realm of the trivial in this matter of insulting language. . . . [I]t would be unfortunate if the law closed all the safety valves through which irascible tempers might legally blow off steam." Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 Harv. L. Rev. 1033, 1053. The same authority, however, goes on to state: "[O]ne who, without just cause or excuse, and beyond all the bounds of decency, purposely causes a disturbance of another's mental and emotional tranquillity of so acute a nature that harmful physical consequences might be not unlikely to result, is subject to liability in damages for such mental and emotional disturbance even though no demonstrable physical consequences actually ensue." Id., p. 1058, cited in *Clark* v. *Associated Retail Credit Men,* 105 F.2d 62, 65 n.11; see also *George* v. *Jordan Marsh Co.,* 359 Mass. 244.

"It appears that the courts increasingly recognize the existence of an independent tort basing liability upon the wrongful causing of distress and consequent physical injury . . . ." Note, 46 A.L.R.3d 772, 777. Following the current weight of authority, the

court holds that intentionally inflicting emotional disturbances on another may constitute a common-law tort in this state.

There remains the question whether the allegations of the first and fourth counts spell out that tort. In neither of those counts is there an allegation that the defendant intended to cause mental distress or that he foresaw that his conduct would cause emotional distress. In two cases arising on demurrer in other jurisdictions, analogous allegations have been included in the complaint. In *George* v. *Jordan Marsh Co.,* supra, 245, the allegation was that the defendant harassed the plaintiff "[w]ith the intent to cause the plaintiff emotional distress." In *Clark* v. *Associated Retail Credit Men,* supra, 63, the allegation was that "[f]or the purpose and with the intent of injuring the plaintiff both psychologically and physiologically," the defendant sent certain letters to the plaintiff. The authorities cited by the present plaintiffs in their brief speak of the tort as consisting of "mental suffering . . . intentionally inflicted," and "intentional infliction of emotional harm." Neither the first nor the fourth counts contains allegations essential to meet the "intentional" element of the tort, and the court holds that these counts are demurrable insofar as they purport to allege a cause of action for intentionally inflicting emotional disturbances.

The plaintiffs claim that these counts also spell out a cause of action for intentional interference with contractual relations. The complaint does not contain any allegation that the plaintiffs had a contract with "other persons" concerning the new mortgage or that the defendant induced "other persons" to break any contract with the plaintiffs; therefore, the complaint fails to state a cause of action in favor of the plaintiffs. *R an W Hat Shop, Inc.* v. *Sculley,* 98 Conn. 1, 14. The plaintiffs also claim

that these counts spell out a cause of action for interference with a prospective economic advantage or expectancy. One of the essential elements of such a cause of action, as cited by the plaintiffs in their brief, is that "there must be involved some conduct tortious in itself, such as fraud, duress, or defamation." These counts do not allege the independent tortious conduct required for a cause of action: there is no allegation of either fraud, duress, or defamation.

The first and fourth counts, therefore, do not state a cause of action on any of the grounds purported to be stated, and the demurrer to those counts is sustained.

## II

The defendant demurs to the second and fifth counts of the complaint on the ground that those counts, purporting to state a cause of action in vexatious litigation, lack the essential allegation that the prior suit terminated in favor of the plaintiffs herein. In effect, the plaintiffs contend in those counts that the defendant did not have proper cause to bring the suit for a brokerage fee because the defendant did not give the plaintiffs a written listing as required by §§ 20-328-1 and 20-328-11 of the regulations of Connecticut state agencies.

Section 52-568 of the General Statutes provides: "Any person who commences and prosecutes any suit or complaint against another, in his own name, or the name of others, without probable cause, and with a malicious intent unjustly to vex and trouble him, shall pay him treble damages." Our Supreme Court has stated with regard to this statute: "In actions for malicious prosecution, and in actions under our statute for vexatious suit, two of the essential allegations are (1) that no probable cause existed for instituting the prosecution or suit com-

plained of, and (2) that such prosecution or suit terminated in some way favorably to the defendant therein." *Frisbie* v. *Morris,* 75 Conn. 637, 639. Subsequent decisions have similarly held that an essential allegation of an action in vexatious litigation is termination of the prior suit in favor of the defendant therein. See *See* v. *Gosselin,* 133 Conn. 158; Wright & FitzGerald, Connecticut Law of Torts (2d Ed.) § 162.

Since there is no allegation in the second and fifth counts of the complaint that the prior suit terminated in favor of the plaintiffs herein, a demurrer to these counts must be sustained. The statement in the plaintiffs' brief regarding the outcome of the prior suit is, of course, not a substitute for an essential allegation in a complaint.

### III

The defendant demurs to the third and sixth count of the complaint on the ground that those counts, purporting to state a cause of action in wrongful attachment, fail to make the requisite allegation that the prior suit terminated in favor of the plaintiffs herein. The plaintiffs, in effect, contend that the prior suit was vexatious and therefore the attachment, although otherwise lawful when made, was wrongful also. Since the attachment was a lawful incident to the prior suit, there is no ground for contending, if that suit is not found to be vexatious, that the attachment was wrongful. In the present complaint, the requisite allegations of an action in vexatious litigation have not been made, and, accordingly, the counts in wrongful attachment, which contain the same allegation, are similarly defective. The demurrer to these counts must therefore be sustained. See *White* v. *Leary,* 6 Conn. Sup. 37 (attachment permitted by law is no violation of a defendant's rights).

## IV

The demurrer to the prayer for relief was orally withdrawn at the argument, on the basis of the representation by counsel for the plaintiffs that the prayer for an injunction would be withdrawn.

The demurrer to the complaint is sustained.